


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                              Case No. 08-CR-300

JEFFREY T. MILLER,

        Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Michelle L. Jacobs, Acting United States Attorney for the Eastern District of Wisconsin, and Penelope L. Coblentz, Assistant United States Attorney, and the defendant, Jeffrey T. Miller, individually and by attorney Nancy Joseph, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in a two-count indictment, which allege violations of Title 18, United States Code, Sections 2423(a) and (e) and 2 and 2422(b).

3. The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with

which he has been charged, and the charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT ONE

### THE GRAND JURY CHARGES THAT:

*In May of 2008, in the State and Eastern District of Wisconsin, and elsewhere,*

### JEFFREY T. MILLER

*knowingly attempted to cause the transport of a minor girl in interstate commerce from Milwaukee, Wisconsin to Gurnee, Illinois with the intent that the girl engage in illicit sexual activity with Miller, to wit: a sexual act (as defined in Title 18, United States Code, Section 2246) with a person under eighteen years of age, which would be in violation of Chapter 109A of Title 18, United States Code, specifically Title 18, United States Code, Section 2243, if the sexual act occurred in the special maritime and territorial jurisdiction of the United States.*

*All in violation of Title 18, United States Code, Sections 2423(a) and (e) and 2.*

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that

2

these facts are true and correct and establish his guilt beyond a reasonable doubt:

Milwaukee Police Department (MPD) Detective Doreen Andrews was involved in an undercover operation on the Internet for the purpose of identifying and investigating persons attempting to exploit or solicit sexual acts with children. On January 22, 2008, while Detective Andrews was online in an American Online Chicago, Illinois chat room,[1] in an undercover capacity as "Maria," a 15-year-old female, she received an instant message (IM) from a subject with the screen name, Jtmillersmemoirs. This subject was later identified as Jeffrey T. Miller, date of birth xx-xx-1972 from Gurnee, Illinois. Detective Andrew's chats with Miller occurred from an undercover computer, located in Milwaukee, Wisconsin.

Maria's profile shows a picture of an Hispanic female, which in actuality is a photo of Milwaukee Police Aide, taken of her when she was 14 or 15 years old. The profile also states in response to Marital Status "ya right I'm 15."

On January 22, 2008, Miller initiated a private chat[2] with Maria and within minutes asked her to describe herself in detail. Miller wanted to know if she was "a

---

[1] A chat room can be described as a virtual interest club meeting place, where individuals go to meet and discuss topics. Users sign in to a room under a screen name of their choice, and they may participate in the common discussion by typing and monitoring the communications on-screen.

[2] The chat room will facilitate private on-screen communication. Other members of the chat room may not see or participate in the private conversation.

3

flirty girl" and asked if she was a virgin, to which Maria replied "ya im 15 duh." Miller questioned Maria about her sexual experience after learning she had previously engaged in oral sex. Miller asked "how often you suck cock" and if she "swallowed." Maria replied it was none of his business and the on-line chat ended.

The two did not chat online again until May 18, 2008. They were again in the American Online Chicago, Illinois chat room. Miller initiated the chat by asking "what up babygirl?" and asked if she was "only 15." When Maria responded affirmatively, Miller wanted to know if she liked older guys. He then commented "you cant even drive yet. Lol." Maria told him she would be 16 in October and asked his age. Miller replied 23, when, in fact, he was 35.

Miller again engaged in a sexual conversation with Maria and suggested she travel to Illinois to see him and engage in a sexual act. Maria asked how she would get there and Miller said by cab.

Miller continued to question Maria about her sexual experience. Miller asked, "you remember how old I am though?" He reminded her that he was "like ten years older." Miller commented "I do not want to get arrested though" and commented that she isn't "even legal yet." Miller worried that she could easily tell someone. Maria responded "so then lets not if u don't trust me aint nothing to me." Miller asked her what she wanted and Maria said that she did not want him to get

4

into trouble. She promised not tell anyone but he didn't know that "so it might not be worth if for" him. Miller responded that they could meet at a hotel. Miller told her that he lived near Gurnee and they again discussed how she would get there.

Miller told Maria he wanted her to engage in oral sex with him. Miller detailed exactly how he wanted Maria to engage in oral sex with him as well as the number of times. He also commented 'I wish you were ready to fuck."

At a later point in this online chat, Miller sent images of adult pornography to Maria and provided her with the web page so she could find additional images.

The two exchanged telephone numbers and in a text message to Maria on May 19, 2008, Miller wrote "think u r ready for lots of cum" and later sent another text message "U gonna suck."

They engaged in another online chat on Tuesday, May 20, 2008, and again discussed how Maria would get to Gurnee, Illinois. Miller wanted to make certain that if he paid for Maria to take a cab from Milwaukee to Gurnee, that she would give him "some bjs" and whether she would "blow" him as soon as she got there. "BJ" and "blow" are common terms for oral sex. They decided that a cab should pick Maria up away from her home and agree upon the Kwik Pantry in Milwaukee, Wisconsin. Four minutes later, Miller told Maria the cab driver would be there in 15 minutes. Miller said the cab driver will contact him once she is in the cab. MPD

5

located the cab driver and advised him of the situation and asked him to stall Miller. The cab driver told Miller that Maria was in the store buying gum when he asked to speak with her.

Miller sent numerous text messages to Maria as she pretended to travel by cab from Milwaukee to Gurnee. Miller had provided his credit card number to the cab company to pay for the trip. When Miller thought it was taking too long for Maria to arrive in Gurnee, he sent several frantic text messages such as "Guess u r not coming and I am screwed" and "Am I going to get busted" and finally "Oh shit. Where r u?"

Detectives from the Lake County, Illinois Sheriff's Department were alerted to the situation and went to the Miller's apartment in Gurnee, Illinois, to talk with him. Miller waived his *Miranda* rights and admitted that he had chatted for the past two to three days with a 15 year old girl who lived in Milwaukee, Wisconsin. He identified his screen name as jtmillersmemoirs. Miller admitted that he had arranged for this girl to travel by cab from Milwaukee, Wisconsin, to Gurnee, Illinois for the purpose of engaging in oral sex. Miller was charged $100 by the cab company to transport the girl to Gurnee. Miller intended to pay for her return cab trip.

Miller gave the Lake County Detective permission to look at his computer which was logged on and he was in a chat room. In his buddy list, there was a header stating circle of friends with a 0/1 next to it. When the Detective opened this up, the only person in his buddy list was the screen name which belonged to Detective Andrews posing as Maria.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: not more than 30 years and $250,000. The count also carries a mandatory special assessment of $100, and a minimum of not less than five years and up to life of supervised release.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING COUNT

8. The government agrees to move to dismiss the remaining count of the indictment at the time of sentencing.

## ELEMENTS

9. In order to sustain the charge of attempt to cause the transportation of a minor with intent to engage in a sexual act with a juvenile, in violation of Title 18, United States Code, Sections 2423(b) and (e) and 2, the government must prove each of the following propositions beyond a reasonable doubt:

> First, the defendant attempted or conspired to have a minor travel in interstate commerce;
>
> Second, the defendant's purpose in having the minor travel in interstate commerce was to engage in a sexual act with an individual he believed was under the age of eighteen; and
>
> Third, that the intended sexual act would have been a violation of criminal law.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

8

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a

reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in the Information is **28** under Sentencing Guidelines Manual §2G1.3(a).

## Specific Offense Characteristics

17. The parties acknowledge and understand that the government will recommend to the sentencing court that a **two-level** increase for use of a computer to persuade, entice, coerce a minor to engage in prohibited sexual conduct under Sentencing Guidelines Manual §2G1.3(b)(3) is applicable to the offense level for the offense charged in Count One for an adjusted level of **30**.

## Special Conditions for Supervised Release

18. The defendant has been advised and understands that under the Sex Offender Registration and Notification Act, a federal law, he must register and keep the registration current in each of the following jurisdictions: the location of his residence; the location of his employment; and, if he is a student, the location of his school. Registration will require that the defendant provide information that includes, name, residence address, and the names and addresses of any places at which he will be an employee or a student. The defendant understands that he must update his registration not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations may subject him to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine and/or imprisonment.

19. Defendant understands and agrees that using the computer for any purpose which might further sexual activity is strictly prohibited. Such use includes, but is not limited to, the following: possession of sexually explicit material in any form; sexually related chat or email exchange; visiting or joining chat rooms which contain sexually explicit conversations; visiting/viewing sexually explicit material on web sites; web sites that contain nudity or sexually explicit materials; downloading binary files, UUE files, MIME files, AVI files, MPG files, Real Player

files, Windows Media Files, digital images in any format, text files or multi-media material that is sexual in nature; or visiting and/or subscribing to user groups, newsgroups, or list servers which contain sexual content.

20. Defendant will provide the United States Probation Department with a current list of all equipment used by the defendant on his computer, including back-up systems. Defendant will keep this list current.

21. Defendant agrees to install, or allow to be installed at his own expense, equipment and/or software to monitor or limit computer use or information stored on the computer.

22. Defendant agrees and voluntarily consents that his computer may be examined and/or searched at any time, announced or unannounced, by the United States Probation Department or its Designee to verify compliance with these special conditions of supervision. The defendant understands and agrees that his computer, related equipment, and storage devices are subject to seizure by the United States Probation Department or its Designee if, during an announced or unannounced examination of the computer or other media, any evidence of computer use prohibited by this plea agreement is discovered.

## Acceptance of Responsibility

23. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual

12

§ 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

24. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

25. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

26. The parties agree to make a joint recommendation of a sentence of 84 months, which is within the applicable sentencing guideline range.

## Court's Determinations at Sentencing

27. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

28. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

29. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

## Special Assessment

30. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Forfeiture

31. The defendant agrees that all properties listed in the indictment were used to facilitate the offense set forth in Count One of the Indictment. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

## DEFENDANT'S WAIVER OF RIGHTS

32. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b.    If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

    d.    At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

    e.    At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

33.    The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his

16

waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

34. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

35. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

36. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative,

or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

37. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

38. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

39. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

40. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The

18

defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing.

## VOLUNTARINESS OF DEFENDANT'S PLEA

41. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 2-23-09

JEFFREY T. MILLER
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 2-23-09

NANCY JOSEPH
Attorney for Defendant

For the United States of America:

Date: 2/23/09

MICHELLE L. JACOBS
Acting United States Attorney

Date: 2-23-09

PENELOPE L. COBLENTZ
Assistant United States Attorney

20